NOT DESIGNATED FOR PUBLICATION

No. 125,737

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KYLER THOMPSON SOSEBEE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Submitted without oral argument. Opinion filed July 19, 2024. Remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Daryl E. Hawkins*, assistant county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before CLINE, P.J., ATCHESON and PICKERING, JJ.


PER CURIAM: Defendant Kyler Thompson Sosebee challenges the Dickinson County District Court's order placing him on lifetime postrelease supervision after he pleaded no contest to and was found guilty of two counts of sexual exploitation of a child, among other crimes. Sosebee raises two points: (1) He should have been sentenced to a 24-month term of postrelease supervision consistent with the representation in the written plea agreement and the district court's discussion during the plea hearing, notwithstanding a statute mandating lifetime postrelease supervision; and (2) the district court erred in ruling lifetime postrelease supervision did not amount to constitutionally cruel and unusual punishment as applied to him.

1

We find the first argument lacks merit. Sosebee's remedy would have been a request to withdraw his plea. As to the second, the district court made insufficient factual findings and legal conclusions—really none—as to why lifetime postrelease supervision would be constitutionally proper in this case. We, therefore, remand with directions that the district court make supplemental findings and conclusions explaining its ruling.

FACTUAL AND PROCEDURAL HISTORY

Under an agreement with the State, Sosebee pleaded no contest in August 2022, and the district court found him guilty of two counts of sexual exploitation of a child, one count of electronic solicitation, and one count of promoting obscenity to minors. The first three convictions are felonies, and the fourth is a misdemeanor. The record indicates when Sosebee was between 18 and 19 years old he engaged in what is often referred to as sexting with multiple underage girls. He sometimes sent them nude photographs of himself, often in conjunction with a solicitation the girls send him like photographs. Some of the girls did so. As part of the plea bargain, the State dismissed a slew of similar charges. Sosebee committed the crimes of conviction between July 2020 and May 2021.

Pertinent to this appeal, the written plea agreement that the prosecutor, Sosebee's lawyer, and Sosebee signed states that a conviction for sexual exploitation of a child carries a 24-month term of postrelease supervision, among other penalties. But under K.S.A. 22-3717(d), the conviction requires mandatory postrelease supervision for life. During the plea hearing, the district court replicated the mistake in explaining the penalties Sosebee faced if he entered a plea and were then found guilty. Sosebee pleaded no contest to the four charges, and the district court adjudged him guilty.

The presentence investigation report correctly stated that a conviction for sexual exploitation of a child requires mandatory lifetime postrelease supervision. But Sosebee did not ask to withdraw his pleas—a request that, if granted, would have undone the plea

2

agreement. Before the sentencing hearing, Sosebee did file a motion with an extended argument asking the district court to find lifetime postrelease supervision to be constitutionally cruel or unusual punishment of him under the Kansas Constitution Bill of Rights section 9 and the Eighth and Fourteenth Amendments to the United States Constitution. The motion addressed the *Freeman* factors—the recognized analytical tool used to assess whether a punishment is constitutionality disproportionate under section 9 in a given case. *State v. Riffe*, 308 Kan. 103, Syl. ¶ 2, 418 P.3d 1278 (2018) (identifying *Freeman* factors); *State v. Freeman*, 223 Kan. 362, Syl. ¶ 2, 574 P.2d 950 (1978). A *Freeman* analysis requires the district court to consider: (1) the particular facts of the crime of conviction and "the character of the offender"; (2) the punishment in comparison to typical punishments for more serious crimes in Kansas; and (3) how other jurisdictions punish crimes like the crime of conviction. *Riffe*, 308 Kan. 103, Syl. ¶ 2.

In a short bench ruling, the district court denied the motion without identifying the *Freeman* factors or discussing them. The district court simply stated it "does not find that . . . the *Freeman* factors are appropriate, in this case." And the district court reasoned that the Legislature made its intent clear in requiring lifetime postrelease supervision.

The district court ordered Sosebee to serve a 59-month prison sentence on the electronic solicitation conviction as the primary offense. That reflects the standard punishment under the sentencing guidelines for a defendant with no criminal history, such as Sosebee, and carries a presumption for incarceration. The district court imposed standard 32-month prison sentences on each of the sexual exploitation of a child convictions with lifetime postrelease supervision and a 12-month jail sentence on the conviction for promoting obscenity to a minor. The district court ordered all of the sentences to be served concurrently. Sosebee has appealed.

ANALYSIS

On appeal, Sosebee challenges only the lifetime postrelease supervision component of his sentences.

First, Sosebee contends the State breached the plea agreement by not seeking postrelease supervision for 24 months, corresponding to the duration recited in the plea agreement. Essentially, he argues a plea agreement is a contract and contracts should be enforced. The argument, which was not presented to the district court, is off the mark in several ways.

Plea agreements have a contractual component to them in that they represent a negotiated bargain between the State and a criminal defendant where both sides make interlocking promises that resemble consideration. A defendant agrees to plead to specified charges, sparing the State the time, the inconvenience, and the risk of going to trial. And, in turn, the defendant typically receives a reduction in charges or a favorable recommendation to the district court regarding the sentence and sometimes both. See *State v. Urista*, 296 Kan. 576, Syl. ¶ 3, 293 P.3d 738 (2013) (contract principles generally applicable to plea agreements); *State v. Gray*, No. 123,730, 2022 WL 879744, at *5 (Kan. App. 2022) (unpublished opinion) (nature of plea bargains). The State is obligated to carry out its part of the plea bargain, whether it is dismissing some charges or recommending a particular sentence. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015).

But a plea agreement differs from a typical contract, where performance rests with the contracting parties, because the district court plays a substantial—and independent—part in the sentencing process. To the extent a plea agreement involves recommended sentences, the district court is free to disregard a joint recommendation and to impose any

4

lawful sentence. *State v. Boley*, 279 Kan. 989, 998, 113 P.3d 248 (2005); *State v. Lomon*, No. 122,633, 2021 WL 745404, at *2 (Kan. App. 2021) (unpublished opinion).

Here, the State did not expressly agree to recommend any particular term of postrelease supervision. The agreement the State approved did, however, materially understate the length of the term. In that situation, it is hardly clear the State was obligated to endorse the shorter period at the sentencing hearing. Moreover, it is a commonplace of contract law that the courts will not enforce illegal bargains or those that otherwise contravene public policy. See *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1015, 425 P.3d 1253 (2018). The district court, therefore, had no obligation to credit that portion of the plea agreement since it conflicted with K.S.A. 22-3717(d).

The plea agreement essentially contained a mutual mistake of law between the State and Sosebee about the proper term of postrelease supervision for the sexual exploitation of a child charges. The district court could have found the agreement unenforceable for that reason unless the State and Sosebee jointly modified it to correct the mistake. See *State v. Hawkins*, No. 114,809, 2016 WL 4499384, at *4-5 (Kan. App. 2016) (unpublished opinion). Again, the district court would not have had to accept and enforce the illegal provision.

Sosebee was obviously aware of the actual term of postrelease supervision well before the sentencing hearing—he filed a motion attacking the condition as unconstitutional. As we have pointed out, he could have filed a motion to withdraw his pleas before sentencing under K.S.A. 22-3210(d) if he felt sufficiently aggrieved by the error. The district court's inaccurate rendition of the postrelease supervision term during the plea hearing would have furnished a good ground for withdrawing the pleas. See *State v. Shaw*, 259 Kan. 3, Syl. ¶ 7, 910 P.2d 809 (1996) ("[W]here the record reflects that the defendant entered a plea of guilty but was incorrectly informed of the maximum penalty provided by law, the conviction must be reversed and the defendant allowed to

withdraw his or her plea."); K.S.A. 22-3210(a)(2) (when accepting plea, district court must inform defendant of "maximum penalty provided by law"). Had Sosebee chosen that approach, he would have had to give up all of the benefits of the plea agreement, including the dismissal of the other charges against him.

On appeal, Sosebee posits several procedural gyrations the district court might have gone through to impose a 24-month term of postrelease supervision and thus to enforce the erroneous plea agreement. He suggests, for example, that the district court could have placed him on probation with an underlying sentence including lifetime postrelease supervision, immediately revoked the probation, and then imposed a lesser sentence with a 24-month term of postrelease supervision. See K.S.A. 22-3716(b)(3)(B)(iii) (upon revoking probation, district court may order defendant to serve original sentence or "any lesser sentence"); *State v. Roth*, 308 Kan. 970, 972, 424 P.3d 529 (2018). But the district court had no duty to elevate the incorrect (and unlawful) provision of the plea agreement over the compulsory sentence required under K.S.A. 22-3717(d) through that sort of charade.

We find Sosebee's appellate arguments unpersuasive especially because he did not avail himself of the obvious avenue for relief in the district court through a motion to withdraw his pleas. The district court had no obligation and really no authority to impose what would have been an illegal sentence simply to conform to a plea agreement it didn't have to adhere to in the first place.

For his second argument, Sosebee says the district court failed to consider the *Freeman* factors and, therefore, made insufficient findings and conclusions in denying his constitutional challenge to lifetime postrelease supervision as applied to him. Sosebee seeks a remand to the district court. We agree.

6

As we have outlined, the district court offered no factual findings or legal conclusions in denying the motion. We, therefore, have nothing we can meaningfully review to affirm the district court's ruling as correct. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012) (remand appropriate when "'the lack of specific findings'" stymies appellate review). And we decline to presume the district court made all relevant findings necessary to support its ruling when it articulated no specific findings. See *State v. Bollig*, No. 115,408, 2018 WL 1976689, at *15 & n.4 (Kan. App. 2018) (unpublished opinion); *In re Adoption of R.H.*, No. 125,525, 2023 WL 5320906, at *5 (Kan. App. 2023) (unpublished opinion). The presumption of full findings drawn from an incomplete judicial recitation need not be applied if the record suggests the district court "did not engage in a rigorous analysis of the [required] factors," leaving the appellate court without a basis for "meaningful appellate review." *Dragon v. Vanguard Industries, Inc.*, 282 Kan. 349, 358, 144 P.3d 1279 (2006); see *Wing v. City of Edwardsville*, 51 Kan. App. 2d 58, 69, 341 P.3d 607 (2014) (presumption of necessary findings applied if record supports its use).

The district court erred in simply declaring the *Freeman* factors to be inapplicable in this case. The *Freeman* factors furnish the evaluative test for ruling on a claim that a sentence is so disproportionately harsh that it amounts to unconstitutional punishment. The test itself simply cannot be set aside. Rather, having considered the circumstances of the case at hand—the crime of conviction and the defendant's character—and how the punishment compares to other crimes in Kansas and how other states punish similar crimes, a district court may find the challenged sentence either constitutionally acceptable or impermissibly cruel or unusual. And the district court has to outline findings and conclusions reflecting its evaluation. The district court short-circuited the evaluative process by jettisoning the governing test. As we have explained, that leaves us with nothing substantive to review.

Similarly, the district court's reference to the Legislature's clear intent in mandating lifetime postrelease supervision cannot be a basis for finding the mandate constitutional. Even the clearest of legislative enactments may be unconstitutional, and the linguistic clarity of the expression cannot itself salvage an otherwise constitutionally infirm enactment. Knowing precisely what the Legislature has done doesn't make its action constitutional.

In sum, the district court failed to articulate meaningful findings of fact and conclusions of law. The court's decision in *Riffe* guides us in appropriately addressing that shortcoming. There, the court determined the district court made insufficient findings under *Freeman* in denying Riffe's claim that life postrelease supervision would be constitutionally cruel or unusual punishment as applied to him. The district court addressed only the first factor. On review, the court declined to presume that the district court had analyzed the other factors and had determined they did not support Riffe's claim. *Riffe*, 308 Kan. at 111. Accordingly, the court remanded to the district court with directions to make appropriate findings addressing all three *Freeman* factors. 308 Kan. at 112.

We do likewise. We remand with directions that the district court make full factual findings and legal conclusions addressing the *Freeman* factors and any other relevant aspects of Sosebee's constitutional claim. The district court may direct the parties to provide proposed findings and conclusions or supplemental written arguments, including on potential remedies. And the district court has the discretionary authority to reconvene the sentencing hearing on the matter of lifetime postrelease supervision for further oral argument, to receive additional evidence, or to announce its findings and conclusions from the bench. Sosebee should be present with his lawyer for a reconvened hearing. If the district court concludes Sosebee has raised a valid constitutional challenge, it should vacate the imposition of lifetime postrelease supervision and consider the parties' arguments on whether the statutory provisions generally governing postrelease

supervision permit or require some shorter term. See, e.g., K.S.A. 21-6804(e)(2)(C) ("complete sentence" includes "period of postrelease supervision"); K.S.A. 22-3717(d) (generally applicable terms of postrelease supervision).

Remanded with directions.